Filed 4/4/23 P. v. Damian CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARCO ANTONIO DAMIAN,<br><br>    Defendant and Appellant. | G061208<br><br>(Super. Ct. No. C85522)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Sheila F. Hanson, Judge. Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan Amann and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

In 2010, appellant was convicted of second degree murder for aiding and abetting the shooting death of Leo Huicochea. Following the enactment of Senate Bill No. 1437 in 2019, he petitioned to vacate his conviction and to be resentenced pursuant to former Penal Code section 1170.95.[1] After conducting an evidentiary hearing, the trial court found appellant was ineligible for resentencing because he directly aided and abetted the shooting with implied malice. Appellant contends there is insufficient evidence to support that finding, but we disagree and affirm the court's denial order.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant has been tried and convicted of murder four times for his participation in the events leading up to Huicochea's death. His first three convictions were overturned due to evidentiary and/or charging error and are not germane to the present appeal. Therefore, our statement of facts is limited to the evidence adduced at his fourth trial in 2010, which is what the trial court relied on in ruling on his petition for resentencing.

The evidence at that trial revealed Huicochea was fatally shot by Cesar Vasquez in La Habra on the night of February 12, 1991. At the time, Vasquez was a member of the Westside gang, and Huicochea was in an outfit called Ward Street, which was loosely associated with Westside's rival, the Monos gang. About a week before the shooting, Monos members smashed the windows on Vasquez's car. Although Huicochea was not involved in that vandalism incident, he suffered Vasquez's deadly wrath because of it.

On the evening of the 12th, Vasquez was driving around La Habra with his girlfriend Gabriella Maldonado and Emilia Ceniceros, who belonged to a female clique of Westside. Gabriella's brother Eduardo and appellant, Ceniceros' cousin, were also in the car. Appellant, whose nickname was "Psycho," knew Vasquez was looking for

---

[1] That section has since been renumbered without substantive change as Penal Code section 1172.6. (Stats. 2022, ch. 58, § 10.) All further statutory references are to the Penal Code.

2

trouble. In fact, according to Ceniceros, Vasquez had a sawed-off shotgun and openly proclaimed he wanted to "blast" Monos members for having smashed his car windows.[2]

While cruising in Monos territory, appellant's group pulled up to pedestrians Angela Orozco and Alma Alvarado, who belonged to the Monas gang, a female subset of the Monos. Vasquez insulted the women and asked about their gang affiliation, and Ceniceros wanted to get out the car and fight them. However, before she could do so, Vasquez pointed his shotgun at them, and they ran away.

Still on the hunt for Monos members, Ceniceros directed Vasquez to a nearby area of La Habra where she believed some of them lived. When they got to Pacific Avenue, Vasquez fired a shot at one of the houses there. Then he reloaded and fired another shot at a nearby house on Fifth Avenue that Ceniceros pointed out. After that, appellant took over the driving duties, and the group headed toward Ward Street. As they made their way, Vasquez was in the front passenger seat, with his loaded shotgun at the ready.

At one point, roughly 15 minutes into their crime spree, appellant's group drove past an alley in which Huicochea was walking with a friend. Ceniceros identified Huicochea as her cousin's boyfriend and a member of the Ward Street gang. She told Vasquez to scare him and expected that Vasquez was going to beat him up. However, Vasquez told appellant to make a U-turn, and as they slowly drove by the alley for the second time, Vasquez leaned out his window with his gun and fatally shot Huicochea in the head from a distance of about 30 feet.

After the shooting, appellant quickly sped away, so Ceniceros did not know Huicochea had been hit. The group drove to Whittier, where they cruised around for about an hour before calling it a night. Later that evening, appellant called his girlfriend

---

[2] Like appellant, Ceniceros was convicted of second degree murder in connection with the shooting of Huicochea. There was evidence suggesting she received favorable consideration at her parole hearing in exchange for testifying at appellant's trials.

and informed her that he had gotten himself into some trouble. When she asked what kind of trouble, he said he couldn't talk about it over the phone.

At trial, the prosecution theorized appellant was guilty of murder as an aider and abettor. Consistent with that theory, the trial court instructed the jury it could find appellant guilty if he directly aided and abetted Vasquez in committing murder, or murder was a natural and probable consequence of the lesser crime of brandishing a firearm. Without specifying which theory it adopted, the jury convicted appellant of second degree murder. It also found he was vicariously armed during that offense. The trial court sentenced him to 16 years to life in prison for those transgressions.

We affirmed the judgment on appeal. (See *People v. Damian* (Mar. 2, 2012, G044308) [nonpub. opn.].) However, after Senate Bill No. 1437 became effective in 2019, appellant petitioned for resentencing under former section 1170.95. (See Stats. 2018, ch. 1015, §§ 2-4 (SB 1437).) The trial court ordered the People to show cause and set an evidentiary hearing pursuant to subdivision (d)(3) of that section. Since neither side offered any new evidence at the hearing, the court relied solely on the transcripts of appellant's 2010 trial in adjudicating his petition. Based on that record, the court had no reasonable doubt appellant could still be convicted of second degree murder because he directly aided and abetted the fatal shooting of Huicochea with implied malice. It therefore denied his petition for resentencing.

## DISCUSSION

Appellant contends there is insufficient evidence to support the trial court's denial order. We disagree.

Appellant's claim is grounded in SB 1437, which narrowed the scope of vicarious liability for the crime of murder. As relevant here, SB 1437 abolished the natural and probable consequences theory for the crime of murder by modifying the homicide statutes to provide that "[m]alice shall not be imputed to a person based solely

4

on his or her participation in a crime." (§ 188, subd. (a)(3).) SB 1437 also created a procedural mechanism for challenging a murder conviction that was obtained using that theory. However, to be eligible for resentencing, the defendant must show that not only he was convicted of murder under the natural and probable consequences theory of aiding and abetting, he must show he would not be liable for murder on a theory that survived the passage of SB 1437, such as direct aiding and abetting. (§ 1172.6, subd. (a); *People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.)

If the defendant makes a prima facie showing to that effect, the trial court is required to issue an order to show cause and, absent a concession by the People, conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing because, notwithstanding SB 1437's changes, he could still be convicted of murder in this state. *(Id.*, subd. (d)(3).) Otherwise, the defendant is entitled to have his murder conviction vacated and to be resentenced pursuant to the terms of section 1172.6.

In this case, the trial court found appellant was ineligible for resentencing because he directly aided and abetted the fatal shooting with implied malice. As our Supreme Court has explained, even though SB 1437 eliminated natural and probable consequences liability for the crime of murder, "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree [implied malice] murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard" of that risk. (*People v. Gentile* (2020) 10 Cal.5th 830, 850.)

More specifically, "to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is

5

dangerous to human life, and acting in conscious disregard for human life." (*People v. Powell* (2021) 63 Cal.App.5th 689, 712-713.)

Before applying those elements to the facts of this case, we first take up appellant's claim we should forego the deferential standard of review that typically governs sufficiency of the evidence claims, i.e., the substantial evidence standard. Because the trial court adjudicated his petition based on the documentary record of his underlying trial rather than live witnesses, appellant argues there is no reason to give the trial court's factual findings any deference because we are in as good a position as the trial court to make our own factual findings from the record. Therefore, we should apply de novo review and only affirm if the record convinces us beyond a reasonable doubt that appellant was liable for second degree murder.

However, as an appellate court, our primary responsibility is to review factual findings, not make them ourselves. (*Pullman-Standard v. Swint* (1982) 456 U.S. 273, 291-292 [factfinding is for trial courts, not appellate courts].) Indeed, our Supreme Court has long recognized an "essential distinction" between trial and appellate courts is that the former decide questions of fact and the latter decide questions of law. (*Tupman v. Haberkern* (1929) 208 Cal. 256, 262–263.) While there are some situations involving mixed questions of law and fact where we do not give deference to the trial court's factual findings when they are derived from a documentary record (see, e.g., *People v. Vivar* (2021) 11 Cal.5th 510, 528 [motion to withdraw guilty plea for failure to advise of immigration consequences]; *In re Long* (2020) 10 Cal.5th 764, 774 [ineffective assistance of counsel claim in habeas proceeding where the Supreme Court had original jurisdiction]), those situations represent the exception, not the rule.

This case does not fall into the exception category. As a matter of fact, in the context of a postconviction proceeding in which the defendant is seeking to take advantage of a new ameliorative sentencing law, our Supreme Court has made it clear that the substantial evidence standard of review applies on appeal. (*People v. Perez*

6

(2018) 4 Cal.5th 1055, 1066 [petition for resentencing under Proposition 36].) This is true even when, as here, the trial court's ruling is based solely on the documentary record of conviction in the underlying case. (*Ibid*.) Therefore, as our colleagues have done in reviewing rulings following an evidentiary hearing under section 1172.6, we will apply that standard of review here. (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232-233; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591; *People v. Clements* (2022) 75 Cal.App.5th 276, 297.)

Under the substantial evidence standard, the test is not whether the prosecution met its burden of proving beyond a reasonable doubt that appellant is ineligible for resentencing, but whether any rational trier of fact could have so found. (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) In making that determination, "'we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [trial judge] could reasonably have deduced from the evidence. [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends. [Citation.]"' [Citation.]" (*Ibid*.) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless "'"upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Looking at the record from this deferential perspective, we are convinced there is sufficient evidence to support the trial court's finding appellant directly aided and abetted the fatal shooting of Huicochea with implied malice. After all, appellant was the one who put Vasquez in the position to carry out the shooting. At Vasquez's behest, he turned their car around and returned to the alley where they had initially spotted Huicochea and his companion. Although appellant didn't stop the car at that point, he

7

slowly passed by the alley, a mere 10 yards from where Huicochea was standing. This afforded Vasquez a clear vantage point from which he was able to unload a deadly headshot at his intended target. These facts provide ample evidence from which the trial court could reasonably conclude appellant assisted the commission of a life threatening act, which satisfied the actus reus requirement for aiding and abetting an implied malice murder.

The evidence also supports the inference that, in assisting Vasquez, appellant knew his conduct endangered the life of another and acted in conscious disregard of that risk. In arguing otherwise, appellant points out Ceniceros gave somewhat conflicting evidence as to whether appellant was actually in the car at the time Vasquez said he wanted to "blast" Monos members for vandalizing his vehicle. On cross-examination, Ceniceros did equivocate somewhat on that issue, but on both redirect and recross, she said she believed appellant was in the car when Vasquez made the blasting statement. This is consistent with her prior testimony. Therefore, the trial court was justified in resolving that factual issue against appellant, and we are not at liberty to second-guess that determination. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Appellant also plays up the fact that prior to shooting Huicochea, Vasquez never fired his gun at any particular individual. Appellant sees this as proof he had no reason to expect that Vasquez would shoot Huicochea. But leading up to the shooting, Vasquez did point his gun at the two Monas members he confronted on the street, causing them to run for their lives. And he did fire shots at two houses that he suspected Monos members were living at. Most importantly, he had proclaimed his desire to "blast" members of the rival gang and Huicochea was a member of an affiliated gang. It's hard to argue surprise when the gunman does what he said he would do.

Despite Vasquez's wildly dangerous behavior leading up to the shooting, appellant claims he did not expect Vasquez to shoot Huicochea because Ceniceros had identified Huicochea as her cousin's boyfriend and said he was in the Ward Street gang,

8

not Monos. As to the gang issue, a police detective did opine that killing a Ward Street member such as Huicochea would do little in terms of exacting revenge on the Monos gang for smashing the windows of Vasquez's car. However, multiple gang members testified that Ward Street and Monos got along and were associated and/or aligned with each other at the time of the shooting. Thus, it was not out of the question for appellant to believe that Vasquez wanted to shoot Huicochea in retaliation for the prior window-smashing incident.

In fact, even though Ceniceros knew Huicochea as a member of Ward Street and her cousin's boyfriend, she still wanted Vasquez to scare him, knowing full well that Vasquez had a gun. While she thought Vasquez was simply going to beat him up, the circumstances were such that Huicochea's death could be said to be unexpected from appellant's perspective. At least that is one conclusion the trial court could reasonably draw from the evidence.

Although appellant insists he never saw the shooting coming, common sense tells us that when a gang member threatens to blast his rivals in retaliation for a previous incident and then wantonly brandishes and fires a sawed-off shotgun the way Vasquez did on the night in question, he will seize every opportunity at his disposal to get his pound of flesh. So, when appellant's group spotted Huicochea and his companion in the alley and Vasquez told appellant to turn around and go back to their location, appellant had every reason to know Huicochea's life was in mortal danger. Nevertheless, appellant brought the car back around without hesitation and positioned it in such a way that allowed Vasquez to carry out his murderous intentions. Then he callously fled the scene without bothering to check on Huicochea's condition.

On this record, we are satisfied there is sufficient evidence to support the trial court's finding appellant directly aided and abetted Vasquez with implied malice. Although the evidence of that theory of liability is not so clear and unequivocal as to be

9

free from any possible doubt, drawing all inferences in favor of the judgment below – as we are required to do – there is substantial evidence appellant, knowing Vasquez intended to shoot Huicochea, actively assisted Vasquez in that endeavor in conscious disregard of the life threatening danger it entailed. We therefore reject his challenge to the sufficiency of the evidence.

## DISPOSITION

The trial court's order denying appellant's petition for resentencing is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.